**Dandra CARO, Appellant,**

**v.**

**HOUSING AUTHORITY OF the CITY OF AUSTIN, TEXAS, Appellee.**

**No. 3–89–204–CV.**

Court of Appeals of Texas, Austin.

Aug. 8, 1990.

Rehearing Overruled Sept. 19, 1990.

Fred Fuchs, Austin, for appellant.

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See*

Elizabeth Morris, Austin, for appellee.

Before POWERS and JONES, JJ., and EARL W. SMITH *, J. Retired, Sitting by Assignment.

POWERS, Justice.

The Housing Authority of the City of Austin recovered judgment for possession and past-due rentals in a forcible-detainer action against Dandra Caro. Caro appeals. We will affirm the trial-court judgment.

## THE CONTROVERSY

Caro resides in a low-income housing facility owned and operated by the Authority. The facility is subsidized by the United States Department of Housing and Urban Development. In consequence, the Authority is required by the terms of an annual "Contributions Contract" to adhere to the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.* (1978 & Supp.1990), and any regulations promulgated thereunder. 42 U.S.C. §§ 1437c, 1437d (1978 & Supp.1990). The provisions of the federal statutes and regulations apply to Caro's written lease contract with the Authority, under which she entered into possession in November 1987.

The lease required Caro to pay a basic monthly rent of $31.00 together with additional sums resulting from utility usage in excess of a specified basic utility allowance. In December 1988, the Authority notified Caro that it intended to terminate the lease for her failure to pay the required rent. Caro did not thereafter pay the rent; and, in January 1989, the Authority notified Caro that it had terminated the lease and demanded possession. When she failed to surrender possession, the Authority brought a forcible-detainer action in which it recovered a judgment for possession and past-due rent. Tex.Prop.Code Ann. § 24.005(a) (1989); *see also* 24 C.F.R. § 966.50 *et seq.* (1989).

Tex. Gov't Code Ann. § 74.003 (1988).

The factual elements of the controversy are not disputed. The parties join issue in this Court on Caro's two points of law wherein she contends the judgment below must be reversed because: (1) the Authority failed to offer evidence that it made demand for the past-due rent before terminating the lease; and (2) the judgment below erroneously awarded the Authority recovery for "utility charges," which sums are outside the sums for which recovery is authorized in a statutory cause of action for forcible detainer. The Authority rejoins that both matters are preempted by federal law.

## RECOVERY OF POSSESSION

■ The statutory cause of action for forcible detainer permits a landlord to recover against a tenant, who wilfully holds over after expiration of his lease, possession of the property together with rent, attorney's fees, and costs of suit. Tex. Prop.Code Ann. §§ 24.002(a)(1), 24.006 (1989 & Supp.1990); Tex.R.Civ.P.Ann. 738 & 746 (Pamp.1990). The statutory cause of action is available to a landlord who lawfully terminates his tenant's lease for the latter's failure to pay an agreed rent. The lawful termination gives rise, of course, to the landlord's legal right to reenter into possession, and results simultaneously in the tenant's holding over if he does not surrender possession to the landlord. *See generally,* Stovall, *Remedies of the Landlord When Tenant Fails to Pay Rent,* 13 Baylor L.Rev. 378 (1961).

The statutes and rules governing the cause of action for forcible detainer do not include a requirement that the landlord "demand" the agreed rent from his tenant before the former might lawfully terminate the lease when payment is not forthcoming. Caro contends, however, that the common law imposes such a prerequisite before a landlord might unilaterally terminate a tenant's leasehold lawfully; and because the forcible-detainer statute and rules assume a lawful termination, the Authority could not recover possession in that statutory cause of action unless it proved it made the requisite "demand." The trial court held simply that the common-law requirement urged by Caro "does not apply" to forcible-detainer actions.

Caro infers the "demand" requirement from the reported decisions in several cases. None of them involve a statutory cause of action for forcible detainer. From our understanding of those opinions, they refer ultimately to a requisite element of proof in an action for ejectment, which was a highly fictitious common-law action to recover possession of real property. In all events, the required proof of "demand" was "necessary only for the purposes of fixing the landlord's right of re-entry," 2 Wood, *Landlord & Tenant* (2d ed. 1888), at 1208, and the proof was not necessary where the parties waived the demand requirement in their lease contract. *Wutke v. Yolton,* 71 S.W.2d 549, 549–50 (Tex.Civ. App.1934, writ ref'd); *Gray v. Vogelsang,* 236 S.W. 122, 127 (Tex.Civ.App.1921, no writ).[1]

■ *Waiver of the "Demand" Requirement.* Caro's lease contract contained sev-

---

1. *Yolton* was a landlord's suit to recover rents from his tenant, and foreclose a landlord's lien on personal property in the leased premises, the issue being the lawfulness of his termination for the tenant's breach of the rent covenant. *Vogelsang* was a suit by the landlord and a tenant of part of the leased premises against the tenant of the whole to cancel the defendant's lease and right of possession for alleged fraud in procuring the lease and for failing to comply with its terms.

The remaining decisions referring to the "demand" requirement invoked by Caro are: *Jack v. State,* 694 S.W.2d 391, 398 (Tex.App.1985, writ ref'd n.r.e.) (lessee's suit for declaratory judgment and injunction against interference with leasehold where lessor contended it was free to lease property to third party owing to lessee's breach of lease in various particulars); *McVea v. Verkins,* 587 S.W.2d 526, 530–32 (Tex. Civ.App.1979, no writ) (action for compensatory damages based upon landlord's conversion of tenant's cattle where landlord excluded tenant from premises for violation of lease terms, including nonpayment of rent, and claimed possession of cattle by virtue of "landlord's lien"); *Wendlandt v. Somers Drug Stores Co.,* 551 S.W.2d 488, 490 (Tex.Civ.App.1977, no writ) (lessee's suit against lessor for injunction restraining interference with leasehold where lessor

eral provisions that originated in federal statutory requirements and regulations enacted thereunder by the Secretary of the Department of Health, Education, and Welfare. These required, for example, that the Authority "shall utilize leases which" require at least 14 days "written notice" before a lease might be terminated for "nonpayment of rent." 42 U.S.C. § 1437d(*l*) (Supp.1990). Similarly, the applicable regulations provided that no "adverse action" may be taken against a tenant's leasehold interest except after an informal and formal "grievance" procedure, the required elements of the formal procedure being set out at length in the regulations. *See* 24 C.F.R. § 966.50–.59 (1989). These regulations were required to "be made a part of all tenant dwelling leases." *Id.* at § 966.52.

The regulations result, in turn, from a statutory direction to the Secretary that he "establish and implement an administrative grievance procedure" designed for the purpose of assuring that "adverse action" against a tenant's leasehold interest will not be taken except after an administrative hearing that afforded the basic due-process elements spelled out in the statute: (1) notice of the grounds of any proposed adverse action against the tenant's leasehold interest; (2) an impartial decisionmaker; (3) an opportunity for a hearing with the right to offer evidence and test opposing evidence; (4) a right to representation; and (5) a right to a written decision. 42 U.S.C. § 1437d(k).

In compliance with the federal statutes and regulations, Section 16 of Caro's lease provided as follows:

had purportedly terminated lease for non-payment of rent); *Shepherd v. Sorrels,* 182 S.W.2d 1009, 1010–12 (Tex.Civ.App.1944, no writ) (action for compensatory damages based upon trespassing by grazing cattle owned by another lessor, where plaintiff-lessor claimed superior right to graze cattle by reason of defendants lessor's failure to pay rent and a resulting forfeiture of his estate.

We do not decide in the present case whether there is such a "demand" requirement in the common law of Texas; we merely assume that there is for purposes of discussion. Several of the decisions listed above indicate some uncertainty in the matter.

As mentioned in the text, the "demand" was an element of proof required in a common-law action for ejectment, but even before statehood, "[a]ll fictitious proceedings in the action of ejectment" were expressly abolished by statute in Texas in favor of a formal, statutory cause of action in "trespass to try title." *See* Tex.Prop. Code Ann. § 22.001 and Revisor's Note; Tex. Rev.Civ.Stat.Ann. 1879 and margin note; *McGrady v. Clary,* 247 S.W. 1099, 1101 (Tex.Civ. App.1923, writ dism'd). Moreover, the Legislature supplied as early as 1876 a *summary* remedy by which the person legally entitled to possession might obtain it through yet another statutory cause of action—an action for "forcible detainer." 1876 Tex.Gen.Laws, ch. 103, at 991; *see now* Tex.Prop.Code Ann. § 24.001, *et seq.; see also* 2 Wood, *Landlord & Tenant* (2d ed. 1888), at 1392.

The statutory cause of action for forcible detainer has never required a "demand" for performance of the rent covenant as a prerequisite for termination of a leasehold. This is consistent, of course, with the theory that the statute is designed only as a summary remedy for one whose legal right to possession exists outside the

statutory provisions. This kind of "demand"—a demand for performance of the rent covenant— should not be confused with what the forcible-detainer statute *does* require—a demand for *possession,* which was an explicit element of the statutory cause of action between 1886 and May 6, 1957. It has since been superseded by the requirement of a "written notice to vacate." 1957 Tex.Gen.Laws, ch. 163, § 1, at 354.

The various discussions of the requirement that a landlord must "demand" the rent owing under his lease with the tenant is somewhat confusing in the decisions listed above where it is mentioned in reference to *past*-due rent. This is inconsistent with the usage of the word "demand" in the context of the ejectment action. In that context the rule was that, absent a waiver in the lease, the plaintiff-landlord was obliged to prove that he had, on the date the rent was *due,* demanded it unsuccessfully of his lessee in a particular manner. If demand in the requisite manner was not proved, the landlord could not recover possession in the ejectment cause of action. 2 Wood, *supra,* at 1208. The proof was required to show: the landlord demanded the rent at sunset *on the day it was due,* or before sunset and continued to sunset, because the tenant had the whole of the due day in which to make payment; the time the sun set, because the court could not take judicial notice of that fact; and that the demand was made on the leased premises by the landlord or an agent authorized by him. *Id.* at 1038–39; *see also Vogelsang,* 236 S.W. at 126–27; *Shepherd,* 182 S.W.2d at 1011.

We need not pursue the matter further owing to our disposition of the appeal on the grounds set out in the text.

All grievances, complaints or appeals arising under [the lease contract] shall be processed and resolved pursuant to the Grievance Procedure of the Authority, as amended, which procedure is posted in the Authority's office and incorporated fully into this lease by reference.

Concerning the termination of Caro's lease for failing to pay the agreed rent, the lease provided first that the Authority was obliged to give her 14-days "written notice of its intent to terminate the lease," stating the Authority's reasons and advising her of her right to reply to the notice and to request a hearing in accordance with the Authority's grievance procedure. The lease then stated:

> In the event [Caro] does not vacate (leave) the dwelling unit after the lease is *finally* terminated and after notice to vacate is given, the Authority may *immediately* bring a forcible detainer suit to evict [Caro], even if the reason for the eviction is [her] failure to pay rent.

(Section 13, emphasis added.)

The grievance procedures called for in the contract were applicable to *all* adverse actions against a tenant except in certain matters not applicable here. 24 C.F.R. § 966.51. The purpose of the procedures was to assure the tenant an opportunity for a hearing if he disputed "within a reasonable time" any intended action for which the Authority had given notice, such as its intention to terminate a tenancy for "nonpayment" of rent. *Id.* at § 966.50. If a tenant presented, orally or in writing, a grievance, it must first be determined informally by the Authority; and, if not satisfied, the tenant could obtain the trial-type administrative hearing mentioned above. *Id.* at § 966.54–.55. If the tenant failed to request a hearing, then the informal disposition of the grievance "shall become final" without prejudice to the tenant's right thereafter to contest *the informal disposition* "in an appropriate judicial proceeding." *Id.* (emphasis added).

In light of the lease provisions and applicable regulations, we interpret sections 13 and 16 of Caro's lease as expressing the parties' intention that the required grievance procedures shall be the *only* prerequisites to the Authority's right "finally" to terminate the lease and bring "immediately" a forcible-detainer action. Caro's theory that the Authority could not lawfully terminate her lease without a "demand" for the past-due rent is inconsistent with the Authority's right to bring a forcible detainer action "immediately" after the lease is "finally terminated" under its own terms, which incorporate the grievance procedure made a prerequisite to such final termination. Any theory that Caro was free to ignore the grievance procedure and insist upon her common law rights in court is inconsistent with the intention expressed in the lease and in the regulations to make the grievance procedures *exclusive* regarding Authority actions adverse to Caro's leasehold interest.

We hold, in consequence, that the foregoing provisions of the lease amounted to a waiver by Caro of the common-law requirement of a "demand" that she urges on appeal.

■ *Satisfaction of the "Demand" Requirement.* The parties stipulated that no "demand" was made by the Authority "except such demand as was contained in the" notices dated December 13, 1988 (Notice of Lease Violation and Intent to Terminate Lease), and January 3, 1989 (Notice of Final Termination and Demand for Possession). The former notice, to which Caro did not respond in any respect, declares:

> You have violated the terms of your lease ... by your failure to pay your rent/charges in the amount of $62.61, which is in violation of Section 4 of your lease.

> Because of the above violation/s, the Authority hereby notifies you of its intentions to terminate your lease on the 14th day after you receive this notice.

> You have a right to a conference in accordance with [Austin Housing Authority] Rules and Regulations. You may meet with the manager as follows: [date, time, and place specified].

Section 4 of the lease contract, to which the notice referred, is the rent covenant

wherein Caro agreed to pay on the first of each month $31.00 rent and any adjustments required under section 8. The Authority's expressed "intentions to terminate your lease" refers necessarily to section 13 of the lease, entitled "Termination of Lease," summarized above.

■ We believe the only reasonable interpretation of the foregoing notice is that the authority requested payment of and claimed a legal right to the $62.61 as rent and charges that were past-due under the terms of the lease contract, that it would proceed to "final termination" if payment was not forthcoming, but if Caro wished she might confer about the matter by meeting at the time, place, and date specified in the notice. In the sense of the common-law "demand" urged by Caro, the word means simply a request for payment of a sum under an assertion of a legal right to it. *See, e.g., National Life & Accident Ins. Co. v. Dove,* 141 Tex. 464, 174 S.W.2d 245, 247 (1943); *see generally* 26A C.J.S. *Demand* §§ 168 & 169 (1956). As we construe the "notice" of December 13, 1988, such was its substance for it referred expressly to the Authority's legal right to the monthly rent given in section 4 of the lease.

■ *"Preemption" of the "Demand" Requirement by Federal Statute.* The federal regulations purport to make the administrative procedure exclusive as to the right and power of a public housing agency to terminate a lease. The administrative procedure results directly from explicit instructions to the Secretary, contained in 42 U.S.C. § 1437d(k), that he enact regulations to require each such agency "to establish and implement" such grievance procedures.

■ Where Congress entrusts to an agency the carrying out of a federal statute through the making and enforcing of agency regulations, these may have preemptive effect upon State law. *R.J. Reynolds Tobacco Co. v. Durham County,* 479 U.S. 130, 149, 107 S.Ct. 499, 512, 93 L.Ed.2d 449 (1986). The precise issue in the present case is whether the Secretary's regulations, making the required administrative procedure exclusive regarding termination of leases entered into by the Au-

thority, were intended to nullify to the extent of any conflict the "demand" prerequisite to termination inferred by Caro from Texas common law, it being undisputed that the regulations were within the Secretary's power to promulgate. If so, the "demand" requirement is nullified to the extent of the conflict, even if the regulations were not intended to replace generally the Texas law of landlord and tenant. *Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152, 154, 102 S.Ct. 3014, 3022, 3023, 73 L.Ed.2d 664 (1982).

We hold the regulations, described above, were intended to nullify any such "demand" requirement. If Caro is free to ignore the required administrative procedure and insist upon her common-law rights in lieu of that procedure, prescribed by her lease as well as the regulations, then the regulations cannot be mandatory and exclusive as they purport to be.

On each of the alternate legal grounds enumerated above, we affirm the judgment of the trial court.