TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00305-CV







Terry Laney, Appellant



v.



Austin Auto Air Conditioning, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 97-08702, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING








 Terry Laney appeals the trial court's judgment that he wrongfully terminated his
real-estate lease to appellee Austin Auto Air Conditioning, Inc. He also appeals the trial court's
award of attorney's fees to appellee and the failure to award him attorney's fees. We will affirm
the judgment.


THE UNDERLYING DISPUTE


 Laney, who owned a used-car business, sublet a portion of the building and adjacent
parking lot to appellee. (1) Among other aspects, the lease required appellee to pay $950 rent on or
before the first of each month, plus pay for one-third of the utilities, bathroom and kitchen
supplies, and mowing and yard maintenance. The lease states that 


on failure to pay the rent in advance, as aforesaid, or to comply with any of the
foregoing obligations, or in violation of any of the covenants, the Lessor may
declare this lease forfeited at Lessor's discretion and Lessor or Lessor's agent or
attorney shall have the power to enter and hold, occupy and repossess the entire
premises hereinbefore described, as before the execution of these presents.


Following this provision, a handwritten addendum referred to an attached, handwritten page of
additional requirements; among these was the requirement that appellee not store on premises
junk, old tires, or non-running cars for more than ten days.

 Appellee did not always fully comply with the lease terms. Appellee paid the rent
in the amount prescribed by the lease, but did not always pay by the first of the month; (2) Laney's
records showed that appellee was late with rent payments fourteen times between January 1994
and December 1997. (3) Laney also testified that appellee's utility payments were so late on three
occasions that Laney received notices of termination of service. There was no claim or proof that
any rent or utility bills were overdue at the time of the attempted termination or at time of trial. 
Laney also complained that appellee allowed its customers and vendors to park in front of the
building, contrary to its rights under the lease, thus blocking motorists' view of his cars for sale.

 On July 8, 1997, Laney gave notice he would "no longer be able to rent shop and
office" to appellee and demanded that appellee vacate the premises by August 8, 1997. Appellee
refused, contending it had a valid lease. After initially rejecting the rent payment for August
1997, Laney cashed all of appellee's payments, including ones made after this lawsuit began.

 Following a non-jury trial, the court ruled that the lease was valid and existing
when Laney demanded appellee vacate. The court held that Laney's wrongful termination of the
lease caused appellee to incur $17,576 in attorney's fees to assert its rights. The court declined
to award damages to either side. The court also held the lease terminated on December 31, 1997. 


ANALYSIS


 Laney raises four issues on appeal. He contends that appellee's failure to make
timely rent and utility payments, its use of the front parking areas, and its storage of junk cars for
more than ten days constituted material breaches of the lease agreement and justified termination
of the lease. He argues that he did not waive his right to terminate the lease by accepting late rent
and utility payments. He contends that appellee is not entitled to attorney's fees and that, instead,
he is entitled to damages and attorney's fees for appellee's breach of the lease.

 Whether a party has breached a contract is a question of law. Lafarge Corp. v.
Wolff, Inc., 977 S.W.2d 181, 186 (Tex. App.--Austin 1998, pet. denied). The trial court's
conclusions of law are reviewable de novo. See Westech Eng'g, Inc. v. Clearwater Constructors,
Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, writ denied). We will uphold conclusions
of law on appeal if we find a legal theory supported by the evidence which supports the judgment. 
Id. Incorrect conclusions of law will not require reversal if the controlling findings of facts will
support a correct legal theory. Id. "[A]lthough the trial court's conclusions of law may not be
challenged on appeal for factual sufficiency, a trial court's conclusions drawn from the facts may
be reviewed to determine the correctness of those legal conclusions." Burtch v. Burtch, 972
S.W.2d 882, 888 (Tex. App.--Austin 1998, no pet.).

 Laney did not state a basis for termination in his notice to appellee, nor did the lease
require him to do so. To evaluate his claim of breach, we will address the bases he asserted at
trial and restates on appeal.

 Late payment of rent. The lease expressly authorizes Laney to declare the lease
forfeited upon appellee's failure to pay the rent in advance. Appellee does not dispute Laney's
contention that the rent was late on more than one occasion, including the month in which Laney
declared the lease forfeited. Laney does not dispute that he accepted every late payment, including
the one during the month in which he declared the lease forfeited; in fact, he accepted the payment
on July 2 before declaring the lease forfeited on July 8. Appellee argues that Laney thereby
waived his right to terminate the lease. 

 Waiver is the intentional relinquishment of a known right. Straus v. Kirby Court
Corp., 909 S.W.2d 105, 108 (Tex. App.--Houston [14th Dist.] 1995, writ denied). Where there
is conflicting evidence, waiver is a question for the factfinder. Id. A lessor can waive his right
to declare a forfeiture for failure to pay by a certain date if he repeatedly does not demand
payment by that certain date. Wendlandt v. Sommers Drug Stores Co., 551 S.W.2d 488, 489
(Tex. Civ. App.--Austin 1977, no writ); see also Miers v. Clark, 253 S.W.2d 941, 942 (Tex.
Civ. App.--Dallas 1952, no writ). 

 The Wendlandt case has factual similarities to this case. In both cases, the lease
required rent payments on or in advance of the first of the month. See Wendlandt, 551 S.W.2d
at 489. As in this case, the Wendlandt lease allowed the lessor, upon discovering a breach, to
declare the lease forfeited at his discretion; unlike this lease, the Wendlandt lease gave the lessee
thirty days to cure any defaults. Id. Starting at least by mid-1973, the lessor in Wendlandt
accepted without complaint rent checks mailed between the second and fifth of the month. In
November 1974, the lessor sent a letter dated the second of the month citing the failure of the rent
check to arrive by the first. (The check for that month, mailed as customarily done on the second,
apparently never reached the lessor.) In December 1974, the lessor sent a letter on the third of
the month citing the breach of the prompt-payment requirement as a basis for termination of the
lease. The lessor accepted lessee's payment of both months' rent, but insisted the lease was
terminated. 

 In Wendlandt, this Court held that, by not complaining about the late arrival of rents
for one-and-a-half years, the lessor waived its right to declare the lease forfeit for late payment. 
Id. at 490. This Court also held that, unless the lease waives demand for performance as a
condition precedent to forfeiture, a landlord cannot declare a lease forfeited for the tenant's failure
to comply with the payment provisions without first making demand for performance. Id.; but
see Caro v. Housing Authority of City of Austin, 794 S.W.2d 901, 903 n.1 (Tex. App.--Austin
1990, writ denied) (declining to decide whether duty to demand performance exists). In
Wendlandt, this Court wrote:


Notice of default in payment of rent must convey a message that the notifier is
initiating steps necessary to finally assert his legal rights that if default is not cured,
he may take final action as provided in the contract. . . . [I]t is only in cases in
which the lease contract contains an express waiver of demand for performance that
the rule announced above can be disregarded. 


Wendlandt, 551 S.W.2d at 490.

 Laney's reliance on Straus for the proposition that he did not waive his right to
evict appellee by accepting late rent payments is misplaced because the lease in Straus had a clause
that specifically allowed the landlord to accept late payments without waiving its right to evict the
tenant. See Straus, 909 S.W.2d at 107. Laney has no such clause in this lease.

 We hold that the trial court correctly concluded that Laney wrongfully terminated
the lease with regard to late rent payments. The lease itself does not address whether Laney had
to warn appellee of a default. It contains neither a notice-of-default requirement nor a waiver of
demand for performance. Laney accepted all of appellee's forty-one rent payments made before
July 1998, including the thirteen that were late; there is no evidence of complaint regarding
lateness. Laney's repeated acceptance of late payments with no evidence of complaint curtailed
his right to terminate the lease for late payments without warning; though he might have
resurrected that right by cautioning of his intent to enforce the timeliness provision, there is no
evidence of any such warning. Laney accepted the July 1998 rent a day late, then declared the
lease forfeited six days later. The notice of forfeiture did not give appellee the chance to cure any
default (indeed, the payment had been made) nor is there evidence that Laney warned appellee that
he intended to start enforcing the payment deadline. After the July notice, appellee tendered every
rent payment on or before the first of the month. (4) 

 Payment of utilities. Though appellee sometimes paid the utility bill late, there is
no evidence that appellee breached its obligation to pay the utility bills. No clause in the lease sets
a date for payment of the utility bill and there is no provision that failure to meet the utility
company's deadlines will result in termination. The termination clause does not authorize
termination for late payment of utility bills, only for non-payment of the bills. There is no
evidence that the utility bill was due and unpaid when Laney declared the lease was terminated. 

 Use of the front parking lot and storage of junk and non-running cars. The lease
did not authorize termination for use of the front parking lot. No provision in the lease, including
the termination clause, refers to or limits use of the front parking lot. There was no evidence of
an oral agreement allowing termination for any breach of an oral agreement regarding use of the
parking lot. Appellee's principal shareholder and officer, Chris Perry, testified he could not
authorize appellee's customers and suppliers to park in the front driveway (which blocked the view
of Laney's cars from Burnet Road), not because of any lease language or possessory interest by
Laney, but because the driveway area was "Austin property"--i.e. the City of Austin's easement. 
The lease does not authorize termination for interference with the City's easement.

 Nor did the lease authorize termination for the storage of junk and cars. The
termination clause authorizes termination for violation of the "foregoing obligations" listed on
page one of the lease. The clause restricting the storage of junk and cars appears on a page
attached to the lease; it is therefore not one of the "foregoing obligations" listed on page one. 
Even the reference on page one to the existence of page two appears after the termination clause.

 We find no evidence in the record that Laney notified appellee that he would declare
the lease forfeited because of its breach of parking-lot or junk-storage agreements. Laney
complained, especially about the use of the front lot, but the only evidence is that appellee rectified
the problems by moving the offending vehicles.

 We hold that the trial court correctly declared that the parties had a valid lease and
that Laney wrongfully terminated it. 

 The record also supports the trial court's refusal to award Laney damages. He
requested damages for actions of appellee that we have just determined did not justify termination
of the lease. The record shows no outstanding payments due and no other breaches of the lease
or oral understandings that were not remedied promptly. Our conclusion that he wrongfully
terminated the lease necessarily means the trial court correctly did not award him damages for
appellee's refusal to vacate the premises upon his notice of termination.

 Laney correctly states that the prevailing party in a breach-of-contract suit is entitled
to recover reasonable attorney's fees. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West
1997). The prevailing party in a declaratory-judgment action also may recover reasonable
attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). We review an award
of attorney's fees for abuse of discretion. Oake v. Collin County, 692 S.W.2d 454, 455 (Tex.
1985) (declaratory judgment). Laney argues that appellee is not entitled to attorney's fees because
it breached the lease and should not have prevailed; he contends that he should prevail and gain
attorney's fees. We have concluded, however, that the trial court correctly decided that appellee
should prevail and that Laney should not. Laney's actions compelled appellee to file this suit to
enforce its rights under the lease. The trial court did not abuse its discretion by awarding
attorney's fees to the prevailing party in a declaratory-judgment and contract case. Laney does
not attack the amount of attorney's fees awarded. We find no abuse of discretion in the trial
court's award.

 Having resolved all issues on appeal in appellee's favor, we affirm the trial court's
judgment.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: April 22, 1999

Do Not Publish
1. The initial lease ran for six months from January 1, 1994. A second lease ran for eighteen
months from July 1, 1994. During the second lease-term, the parties agreed to one-year renewals. 
There was some dispute at trial regarding the nature of the renewal option. On appeal, however,
Laney does not dispute that a lease was in effect in July 1997; he focuses his contentions on
whether appellee breached the terms of the renewed lease.


 Though the agreement between Laney and appellee was a sublease, for convenience, we
will refer to it as "the lease."
2. Laney's records have an unexplained gap in place of the January 1996 and January 1997
payments. There was evidence that winter was a very slow season for air-conditioning repair and
that appellee sometimes closed his shop during winter.
3. Only three of the late payments were made later than the third day of the month. Six of the
late payments were made on the first non-holiday weekday after the first of the month.
4. Laney's records show that he accepted the August 1998 rent payment on August 13; other
evidence shows that appellee tendered that payment on July 29, but Laney initially refused to
accept it.



torage of junk and cars appears on a page
attached to the lease; it is therefore not one of the "foregoing obligations" listed on page one. 
Even the reference on page one to the existence of page two appears after the termination clause.

 We find no evidence in the record that Laney notified appellee that he would declare
the lease forfeited because of its breach of parking-lot or junk-storage agreements. Laney
complained, especially about the use of the front lot, but the only evidence is that appellee rectified
the problems by moving the offending vehicles.

 We hold that the trial court correctly declared that the parties had a valid lease and
that Laney wrongfully terminated it. 

 The record also supports the trial court's refusal to award Laney damages. He
requested damages for actions of appellee that we have just determined did not justify termination
of the lease. The record shows no outstanding payments due and no other breaches of the lease
or oral understandings that were not remedied promptly. Our conclusion that he wrongfully
terminated the lease necessarily means the trial court correctly did not award him damages for
appellee's refusal to vacate the premises upon his notice of termination.

 Laney correctly states that the prevailing party in a breach-of-contract suit is entitled
to recover reasonable attorney's fees. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West
1997). The prevailing party in a declaratory-judgment action also may recover reasonable
attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). We review an award
of attorney's fees for abuse of discretion. Oake v. Collin County, 692 S.W.2d 454, 455 (Tex.
1985) (declaratory judgment). Laney argues that appellee is not entitled to attorney's fees because
it breached the lease and should not have prevailed; he contends that he should prevail and gain
attorney's fees. We have concluded, however, that the trial court correctly decided that appellee
should prevail and that Laney should not. Laney's actions compelled appellee to file this suit to
enforce its rights under the lease. The trial court did not abuse its discretion by awarding
attorney's fees to the prevailing party in a declaratory-judgment and contract case. Laney does
not attack the amount of attorney's fees awarded. We find no abuse of discretion in the trial
court's award.

 Having resolved all issues on appeal in appellee's favor, we affirm the trial court's
judgment.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: April 22, 1999

Do Not Publish
1. The initial lease ran for six months from January 1, 1994. A second lease ran for eighteen
months from July 1, 1994. During the second lease-term, the parties agreed to one-year renewals. 
There was some dispute at trial regarding the nature of the renewal option. On appeal, however,
Laney does not dispute that a lease was in effect in July 1997; he focuses his contentions on
whether appellee breached the terms of the renewed lease.


 Though the agreement between Laney and appellee was a sublease, for convenience, we
will refer to it as "the lease."
2. Laney's records have an unexplained gap in place of the January 1996 and January 1997
payments. There was evidence that winter was a very slow season for air-conditioning repair and
that appellee sometimes closed his shop during w