

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00163-CV

_____

ELIZABETH PERRY, Appellant

V.

WICHITA FALLS HOUSING AUTHORITY, Appellee

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. DC78-CV2020-2665

Before Kerr, Wallach, and Walker, JJ.
Opinion by Justice Kerr

## OPINION

In this forcible-detainer case, Elizabeth Perry appeals from the trial court's judgment awarding possession of an apartment to the Wichita Falls Housing Authority (WFHA). In two issues, Perry argues that the trial court erred by awarding possession to WFHA because (1) WFHA failed to provide her with the requisite statutory notice to vacate under the Texas Property Code and (2) WFHA failed to give her notice of her rights under the Violence Against Women Act as required by federal law. Because WFHA failed to give Perry the statutorily required notice to vacate under Texas law, we reverse the trial court's judgment.

## I. Background

WFHA is a federally supported public-housing agency (PHA) that provides housing assistance to low-income individuals and is governed by the United States Housing Act of 1937 and Department of Housing and Urban Development (HUD) regulations. *See Heinert v. Wichita Falls Hous. Auth.*, 441 S.W.3d 810, 816 (Tex. App.—Amarillo 2014, no pet.) (stating that as a federally subsidized housing authority, "WFHA is governed by the United States Housing Act of 1937 and its attendant regulations"). "Among other things, federal law dictates much of the content of public[-]housing leases, requiring the inclusion of various provisions and prohibiting other provisions." *Id.*; *see* 24 C.F.R. § 966.4 (2016) ("Lease Requirements").

In March 2020, Perry entered into a "dwelling lease" with WFHA. Consistent with HUD regulations, the lease provided that WFHA could "terminate or refuse to

renew this Lease for serious or repeated violations of Resident's obligations under any section of this Lease or for other good cause." *See* 24 C.F.R. § 966.4(*l*)(2)(i), (iii). If WFHA terminated the lease, the lease required WFHA to give Perry written notice of lease termination that included the specific grounds for termination and informed Perry of her rights (1) "to make such reply as [she] may wish"; (2) to examine management's documents "directly relevant to the termination or eviction"; and (3) to request a hearing in accordance with the current grievance procedure, which was "posted in the Management Office and incorporated herein by reference." *See id.* § 966.4(*l*)(3)(ii). The lease also provided that "[n]otice to vacate may be combined with and run concurrently with notice of lease termination." *See id.* § 966.4(*l*)(3)(iii).

The lease further provided that WFHA would annually re-examine Perry's circumstances to determine if there had been any changes that would "affect rent, eligibility[,] and appropriateness of apartment size." The lease required Perry to attend a re-examination interview and to provide WFHA with "such information and certifications as may be necessary" for it to conduct its review. The lease stated that failure to attend the interview "on the designated date and time" was "considered a serious violation of [the] lease and grounds for termination of [the] lease."

On July 29, 2020, WFHA sent Perry a written notice informing her that her re-examination interview was scheduled for September 3, 2020, and listing the documents that she was required to provide to WFHA at the interview. When Perry

failed to appear for her interview, WFHA notified her in writing that her interview was rescheduled for September 10, 2020. Perry did not attend the second interview.

That same day—September 10, 2020—WFHA notified Perry in writing that because she had breached the lease by failing to attend the two re-examination appointments, the lease would be terminated on October 31, 2020, and she must vacate the premises by that date. In conformity with the lease's terms and HUD regulations, the lease-termination notice stated the specific grounds for termination[1] and informed Perry of her rights to reply to the notice, to examine WFHA's documents directly relevant to her termination and eviction, and to request a hearing under the grievance procedure. *See id.* § 966.4(*l*)(3)(ii). The notice explained that if Perry did not vacate the premises by the October 31 deadline, WFHA would file a forcible-detainer action against her. Also on September 10, Perry signed (1) an "Eviction Delivery Certification" indicating that she had received the lease-termination notice and (2) a "Delivery Receipt of VIOLENCE AGAINST WOMEN REAUTHORIZATION ACT (VAWA)."

Perry did not reply to the lease-termination notice or avail herself of the grievance procedure. She failed to vacate the property, and on December 9, 2020,

---

[1]On appeal, Perry does not dispute that she breached the lease for the specific grounds stated in the lease-termination notice: her failure to attend the re-examination interview.

WFHA sued her for forcible detainer. The justice court awarded possession of the property to WFHA, and Perry appealed to district court for a trial de novo.[2]

During the trial de novo, Donna Lewis, an employee in WFHA's Occupancy Department, testified that she had mailed the lease-termination notice to Perry and that the termination notice was attached to Perry's door. Through Lewis, WFHA introduced into evidence (1) the lease; (2) the notifications of the two lease re-examination appointments; (3) the lease-termination notice; (4) the signed eviction-delivery certification;[3] and (5) the signed VAWA delivery receipt. When Perry's attorney asked Lewis on cross-examination what the VAWA delivery receipt was "supposed to indicate the receipt of," Lewis responded, "When I serve the eviction, I also add the VAWA paperwork with the eviction . . . [a]nd I also mail it to her." Lewis went on to explain what the VAWA paperwork included:

> [Lewis]: Okay. The form that I sent to them was attachment 3, Certification of Domestic Violence, Sexual Assault or Stalking.
>
> This is what I sent to them when I sent the eviction. I send one to their door and I also sent it through the mail.

---

[2]In eviction cases, a justice court's judgment is appealed to county court. *See* Tex. R. Civ. P. 510.10(c). But the 78th District Court, like all Wichita County district courts, "has the civil jurisdiction of a county court." Tex. Gov't Code Ann. § 24.132(b); *see id.* §§ 24.132(d), .180(c).

[3]Although Lewis testified that the lease-termination notice was attached to Perry's door—which could be interpreted as implying that Perry was not at home when the lease-termination notice was delivered—the "Eviction Delivery Certification" indicated that she was home and accepted delivery of the notice. In any event, Perry does not dispute that she received the notice.

Q. (By [Perry's counsel]) And how many forms is that?

A. It's two forms. It's backwards and -- both sides.

Perry did not testify.

The trial court found for WFHA and signed a possession judgment in WFHA's favor that also awarded WFHA attorney's fees and court costs. Perry superseded the judgment and remains in possession of the apartment.

At Perry's request, the trial court filed findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296, 297. Perry has appealed, raising two notice-related issues challenging the trial court's legal conclusions that "[a]ll legal notices and prerequisites to granting an eviction have been met" and that "[t]he evidence presented is sufficient to establish that [WFHA] is entitled to a judgment for possession of the premises, costs of court, and attorney's fees."

## II. Standard of Review

We review the trial court's legal conclusions de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We may review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software*, 83 S.W.3d at 794); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App.—Fort Worth 2012, no pet.). That is, because a trial court's conclusions of law are not binding on us, we will not reverse a trial court's judgment based on an incorrect conclusion of law when

the controlling findings of fact support the judgment on a correct legal theory. *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 679 (Tex. App.—Fort Worth 2015, no pet.).

### III. Forcible Detainer

In her first issue, Perry asserts that the trial court should not have granted WFHA judgment on its forcible-detainer claim because WFHA failed to comply with the Texas Property Code's notice-to-vacate requirements.

Because forcible detainer is a statutory cause of action under the Texas Property Code, a landlord must strictly comply with its requirements. *Geters v. Baytown Hous. Auth.*, 430 S.W.3d 578, 584 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Kennedy v. Andover Place Apartments*, 203 S.W.3d 495, 497 (Tex. App.—Houston [14th Dist.] 2006, no pet.). *See generally* Tex. Prop. Code Ann. §§ 24.001–.011. Under Texas Property Code Section 24.002, a tenant commits a forcible detainer by refusing to surrender possession of real property after the landlord has lawfully terminated the tenant's right to possession. *See* Tex. Prop. Code Ann. § 24.002(a); *Kennedy*, 203 S.W.3d at 497. Section 24.002 requires a landlord to make a written demand for possession and to comply with Section 24.005's notice-to-vacate requirements. Tex. Prop. Code Ann. § 24.002(b). Proper notice is an element of a forcible-detainer action. *Fashakin v. Fed. Home Loan Mortg. Corp.*, No. 14-11-01079-CV, 2013 WL 1316694, at *2 (Tex. App.—Houston [14th Dist.] Apr. 2, 2013, pet. denied) (mem. op.).

Here, Perry asserts that WFHA failed to comply with Section 24.005's notice-to-vacate requirements. When, as here, the occupant is a tenant under a written lease, the landlord must give a defaulting tenant at least three days' written notice to vacate before filing a forcible-detainer suit, unless the parties have contracted in writing for a larger or smaller notice period. Tex. Prop. Code Ann. § 24.005(a).[4] But "[i]f the lease or applicable law requires the landlord to give a tenant an opportunity to respond to a notice of proposed eviction, a notice to vacate may not be given until the period provided for the tenant to respond to the eviction notice has expired." *Id.* § 24.005(e).

Perry's lease gave her the right to reply to a lease-termination notice and the right to request a hearing in accordance with the grievance procedure. Although neither the lease nor the lease-termination notice specified the period in which Perry was required to respond to the notice or to request a grievance hearing, Section 24.005(e) applies because both the lease and the HUD regulations require WFHA to give Perry an opportunity to respond, either through a reply or by requesting a grievance hearing. *See* 24 C.F.R. § 966.4(*l*)(3)(ii); Tex. Prop. Code Ann. § 24.005(e); *Kennedy*, 203 S.W.3d at 498 (concluding that lease stating that a termination notice must "advise the Tenant that he/she has 10 days within which to discuss the proposed termination of tenancy with the Landlord" requires an opportunity to respond under Section 24.005(e)); *see also Briones v. Brazos Bend Villa Apartments*,

---

[4]A notice to vacate is considered a demand for possession for purposes of Section 24.002(b). Tex. Prop. Code Ann. § 25.005(h).

438 S.W.3d 808, 814 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (applying Section 24.005(e) where lease required landlord to give tenant "10 days within which to discuss the proposed [lease] termination"); *Geters*, 430 S.W.3d at 586 (concluding that under *Kennedy* and Section 24.005(e), landlord should have provided tenant with a second notice to vacate where lease stated that tenant had a "right to make such reply as [she] may wish and . . . to request a hearing in accordance with the current Grievance Procedure"). And because Section 24.005(e) applies, WFHA could not combine its notice to vacate with its lease-termination notice; it was required to send Perry a separate, later notice to vacate. *See Kennedy*, 203 S.W.3d at 498 ("Under [Section 24.005(e)'s] plain language, when the lease requires an opportunity to respond to a proposed eviction and [S]ection 24.005 thus applies, the landlord must provide a separate, later notice to vacate."); *see also Briones*, 438 S.W.3d at 814–15 (relying on *Kennedy* and *Geters* and concluding that in case involving HUD-subsidized tenant, landlord's combined notice of termination and to vacate premises did not constitute required statutory notice to vacate required by Section 24.005(e)); *Geters*, 430 S.W.3d at 581 n.2, 585–86 (concluding that even though lease subject to HUD regulations "stated that notice to vacate may be combined with and run concurrently with notice of lease termination," Section 24.005(e) required landlord to provide tenant with a notice to vacate after the period to respond to the lease-termination notice had expired).

WFHA counters that it was not required to send Perry a separate notice to vacate under Section 24.005(e) because federal-housing regulations—not the Texas Property Code—govern WFHA's notice obligations and that federal law thus preempts state law to the extent the two conflict. *See Caro v. Hous. Auth. of Austin*, 794 S.W.2d 901, 906 (Tex. App.—Austin 1991, writ denied) (recognizing that when Congress entrusts a federal agency to make and enforce regulations to carry out a federal statute, those regulations "may have preemptive effect upon State law" and concluding that federal-housing regulation at issue preempted state common law to the extent the two conflicted). Specifically, WFHA argues that 24 C.F.R. § 966.4(*l*)(3)(iii)—which provides that "[a] notice to vacate which is required by State or local law may be combined with, or run concurrently with, a notice of lease termination under paragraph (*l*)(3)(i) of this section"—conflicts with Section 24.005(e) and thus impliedly preempts it. Thus, WFHA argues, it was not required to send Perry a separate notice to vacate because the September 10, 2020 lease-termination notice—which notified Perry that WFHA would terminate her lease on October 31, 2020, and notified her that she was required to vacate the property by that date—complied with federal law.

Federal law or regulations may impliedly preempt state law if the state law actually conflicts with federal law or regulations. *See, e.g., MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 482 (Tex. 2010) (citing *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 2617 (1992)); *BIC Pen Corp. v. Carter*, 251 S.W.3d 500,

504 (Tex. 2008) (citing *Great Dane Trailers, Inc. v. Est. of Wells*, 52 S.W.3d 737, 743 (Tex. 2001)). "A state law actually conflicts with a federal law when compliance with both is impossible or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *MCI Sales*, 329 S.W.3d at 482 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941)); *see United States v. Locke*, 529 U.S. 89, 109, 120 S. Ct. 1135, 1148 (2000). When a state law conflicts with a federal law, it is preempted and has no effect. *Great Dane Trailers*, 52 S.W.3d at 743 (citing *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128–29 (1981)); *see* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). But "[w]e presume federal law does not bar the state's exercise of its historic police powers unless Congress clearly expresses the intent to preempt such state action." *Damian v. Bell Helicopter Textron, Inc.*, 352 S.W.3d 124, 133 (Tex. App.—Fort Worth 2011, pet. denied) (citing *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655, 115 S. Ct. 1671, 1676 (1995)).

Here, WFHA has the burden to demonstrate preemption. *See Secured Env't Mgmt., Inc. v. Tex. Nat. Res. Conservation Comm'n*, 97 S.W.3d 246, 252 (Tex. App.—Austin 2002, pet. denied) (citing *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 255, 104 S. Ct. 615, 625 (1984); *Boon Ins. Agency, Inc. v. Am. Airlines, Inc.*, 17 S.W.3d 52, 55 (Tex. App.—Austin 2000, pet. denied)). But WFHA has not met its burden here.

11

First, compliance with both state law and federal law is not impossible. While many provisions of 24 C.F.R. § 966.4—which imposes certain requirements on PHA leases—are mandatory, 24 C.F.R. § 966.4(*l*)(3)(iii) is not: "A notice to vacate which is required by State or local law *may* be combined with, or run concurrently with, a notice of lease termination under paragraph (*l*)(3)(i) of this section." 24 C.F.R. § 966.4(*l*)(3)(iii) (emphasis added). In other words, federal law allows a PHA to combine the two notices but does not require it do so. Thus, compliance with both federal law and Texas law is not impossible here.[5]

Second, WFHA has not pointed us to Congress's purposes and objectives, much less explained how Property Code Section 24.005(e) "stands as an obstacle to the accomplishment and execution" of those purposes and objectives. *MCI Sales*, 329 S.W.3d at 482. Congress's purpose is the "ultimate touchstone" in every preemption case. *Damian*, 352 S.W.3d at 133 (citing *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 103, 84 S. Ct. 219, 223 (1963); *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 748 (Tex. 2003) (op. on reh'g)). As our sister court has pointed out, "The operation of public housing by [public housing authorities] is subject to

---

[5]WFHA cites to cases from other jurisdictions that address the preemptive effect of other subsections of 24 C.F.R. § 966.4. *See Moore v. Hous. Auth. of New Haven*, No. CVNH 9303-5688, 1993 WL 525051, at *2–3 (Conn. Super. Ct. Nov. 22, 1993); *Del. State Hous. Auth./Clark's Corner v. Just. of the Peace Ct. 16*, No. 07A-11-004WLW, 2008 WL 4120038, at *4–5 (Del. Super. Ct. Aug. 8, 2008); *V.I. Hous. Auth. v. Edwards*, 30 V.I. 3, 6–8 (V.I. 1994). None address 24 C.F.R. § 966.4(*l*)(3)(iii) or the preemptive effect of any other permissive subsections of 24 C.F.R. § 966.4, and we thus do not find them persuasive.

12

comprehensive federal regulation. Among other things, federal law dictates much of the content of public housing leases, requiring the inclusion of various provisions and prohibiting other provisions." *Heinert*, 441 S.W.3d at 816 (quoting *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 531 (D. Md. 2012) (mem. op.)). Even so, because 24 C.F.R. § 966.4(*l*)(3)(iii) allows—but does not require—a state-law-mandated notice to vacate to be combined with a lease-termination notice, we cannot see how Section 24.005(e), which is a part of state-court eviction procedures, stands as an obstacle to the federal regulation of public housing.

Having rejected WFHA's preemption argument and reviewing the trial court's legal conclusions de novo, we hold that the trial court erred by concluding that "[a]ll legal notices and prerequisites to granting an eviction have been met" and that "[t]he evidence presented is sufficient to establish that [WFHA] is entitled to a judgment for possession of the premises, costs of court, and attorney's fees" because WFHA's failure to give Perry a separate, later notice to vacate as Section 24.005(e) requires was fatal to its forcible-detainer action. *See Briones*, 438 S.W.3d at 814–15; *Geters*, 430 S.W.3d at 585–86; *Kennedy*, 203 S.W.3d at 498. We thus sustain Perry's first issue, which is dispositive of this appeal. *See* Tex. R. App. P. 47.1.

## IV. Conclusion

Having sustained Perry's dispositive first issue, we reverse the trial court's judgment and render judgment that WFHA take nothing. *See Briones*, 438 S.W.3d at 815; *Geters*, 430 S.W.3d at 586; *Kennedy*, 203 S.W.3d at 498.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  May 12, 2022